No. 98,394

STATE OF KANSAS, *Appellee,* v. ERIC D. HOFFMAN, *Appellant.*

(200 P.3d 1254)

Opinion filed January 30, 2009.

*Kory A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for the appellant.

*Jared S. Maag*, deputy solicitor general, argued the cause, and *Lee J. Davidson*, assistant attorney general, was on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J.: Eric D. Hoffman appeals from his convictions for one count of first-degree felony murder, one count of aggravated burglary, and one count of aggravated battery. His trial and conviction were the end result of the following series of events.

Aaron Wood moved to Eureka, Kansas, in August 2005, with his fiancée and their daughter. They moved in with the Welches', his fiancée's aunt and uncle. Hoffman and Wood became friends. About a month later, Wood accused another friend, Stacy Morton, of telling Wood's fiancée that Wood had been unfaithful to her, and tension developed between the two men.

On the evening of September 8, 2005, Hoffman, Wood, and Morton met at the Welches', where Wood challenged Morton to a fight. Hoffman approached Morton, and Morton stepped away, calling Hoffman a "nigger" or a "faggot." Hoffman pursued Morton and punched him in the jaw, knocking him down. The police were summoned, but Morton declined to identify the parties involved.

A little over a month later, on October 11, 2005, Hoffman and Wood visited a couple of bars together. They then walked by Morton's home, where they saw Morton and another man, James Spoon, outside. Hoffman and Wood approached the door and briefly spoke with Morton. Morton then invited Hoffman and Wood inside, and Spoon left shortly afterwards.

Inside the house, Hoffman, Wood, and Morton began to fight. Hoffman used brass knuckles to punch Morton in the ribs, and Wood hit Morton several times and slammed Morton's head into a wall a couple of times. After 5 to 10 minutes, Hoffman and Wood left Morton's home. When they left, Morton was "all right," talking to them, and walking around.

Hoffman and Wood met up at a bar and then went to another bar, where they drank beer and where Wood consumed methamphetamine. They decided to return to Morton's home and "beat him up some more."

On the way, they broke out the window of a delivery truck, with Hoffman first striking it with his brass knuckles and Wood then putting his elbow through the glass. They then encountered an acquaintance, P.J. Harriger, and told him they were going to beat someone up. Harriger followed them to Morton's home and watched Hoffman run to the back of the house while Wood approached the front door. Harriger then walked away from the scene.

Wood used a black folding knife to cut Morton's telephone line. Hoffman attempted to cut the cable line with a knife with an Indian design; when he was unsuccessful, Wood cut the line with his knife. Wood then broke in the locked door. They entered the house through the kitchen, where Hoffman picked up a knife from a counter.

They found Morton asleep on a futon in the living room. Hoffman approached Morton and began to stab him repeatedly with the kitchen knife. Hoffman then handed the kitchen knife to Wood, who stabbed Morton another six or seven times, while Hoffman continued to stab Morton with his Indian-design knife. Afterwards, Hoffman attempted to cut Morton's throat.

At some point during the attack, Hoffman may have picked up a 2-foot-long stick that was lying by the futon and hit Morton over the left eye with it. Wood testified that Hoffman used the stick in the second attack but conceded it might have been during the fight earlier that day.

Hoffman and Wood left Morton's house, taking the kitchen knife and stick with them. They also disabled Morton's cordless telephone and threw it in the yard. As they left, they saw Harriger, who ran away from them. They chased Harriger home; later, they telephoned him and threatened to hurt him if he reported what he had seen.

Hoffman and Wood eventually made their way to Crystal Strickler's apartment. Wood asked her whether he could borrow her car. Although she said no, he took the car anyway. Wood drove Hoffman home and then parked the car several blocks from Strickler's apartment. He threw Morton's kitchen knife on the top of a nearby building and then walked back to the Welches'.

Morton's girlfriend discovered Morton's dead body the next morning and called the police. The police questioned Wood, who claimed to know nothing about Morton's death and requested an attorney. The police interviewed Hoffman a number of times. He initially insisted he was only a spectator during the second visit to Morton's home, when he watched Wood hit and kick Morton, who was still speaking and ambulatory when they left. By his fifth interview, he acknowledged hitting Morton on the head with the stick and conceded he might have caused some of the stab wounds.

Subsequent searches and disclosures by Wood produced an Indian-design knife at Hoffman's home, a black folding knife at the Welches' house, a hand-carved club from a house into which Wood was moving, and a kitchen knife recovered from the place where Wood said he had thrown it.

The autopsy report disclosed signs of blunt-force trauma to Morton's head, a broken jaw, stab wounds to his neck and torso, and defensive wounds to his hands and forearms. The autopsy examiner concluded that the cause of his death was "[m]ultiple blunt force injuries and then also multiple sharp force injuries," with both types of injuries contributing equally to his death.

Wood entered a guilty plea to first-degree felony murder, and the State dismissed charges of aggravated burglary, aggravated battery, and felony theft. He received a sentence of life with the possibility of parole after 20 years.

A jury found Hoffman guilty of first-degree felony murder, aggravated burglary, and aggravated battery. The district court sentenced him to life imprisonment for murder, with consecutive terms of 41 months for burglary and 32 months for battery. He filed a timely notice of appeal.

Hoffman initially argues that the district court erred in failing to instruct the jury on a lesser included crime of involuntary manslaughter. He contends the jury could have concluded from the evidence before it that Morton's death was the end product of a misdemeanor instead of a felony. He suggests the jury could have found that Hoffman entered Morton's house with the intention of committing a simple battery, thereby resulting in a misdemeanor burglary, which would not support a felony murder conviction.

Hoffman did not object to the jury instructions as they were presented. If a defendant does not object to the trial court's giving or failure to give an instruction on lesser included offenses, it is reversible error only if the giving of the instruction or the failure to give the instruction was clearly erroneous. *State v. Engelhardt*, 280 Kan. 113, 134, 119 P.3d 1148 (2005).

When the defendant fails to request a lesser included offense instruction, the failure to give the instruction is clearly erroneous "only if the appellate court reaches a firm conviction that, had the instruction been given, there was a real possibility the jury would have returned a different verdict. [Citation omitted.]" *State v. Simmons*, 282 Kan. 728, 741, 148 P.3d 525 (2006).

The duty to instruct on a lesser included offense arises only when evidence supports the lesser crime. The evidence of the lesser

crime does not have to be strong or extensive as long as the jury might reasonably infer the lesser crime from that evidence. The court must give such an instruction even if the evidence is weak and inconclusive and consists solely of the testimony of the defendant. *State v. Kirkpatrick*, 286 Kan. 329, 334, 184 P.3d 247 (2008).

This general rule is abrogated in felony-murder cases:

" ' "When murder is committed during the commission of a felony, the rule requiring instructions on lesser included offenses does not apply. The felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first-degree murder. It is only when the evidence of the underlying felony is weak, inconclusive, or conflicting that instructions on lesser included offenses may be required." [Citation omitted.]' " 286 Kan. at 334-35 (quoting *State v. Calvin*, 279 Kan. 193, 201-02, 105 P.3d 710 [2005]).

The district court instructed the jury on first-degree premeditated murder, first-degree felony murder committed in the course of an aggravated burglary, second-degree intentional murder, second-degree unintentional murder, and involuntary manslaughter. The jury found Hoffman guilty of felony murder.

The aggravated burglary charge was predicated on the theory that Hoffman entered Morton's home with the intent to commit aggravated battery. Aggravated battery is a felony and consists of intentionally or recklessly causing great bodily harm or causing bodily harm with a deadly weapon or in a manner that could inflict great bodily harm, disfigurement, or death. K.S.A. 21-3414. Hoffman contends the evidence was weak and inconclusive that he intended to commit aggravated battery when he entered Morton's house. He predicates this argument on a reasonable conclusion that he returned to Morton's residence only to beat Morton up again, not to commit an aggravated battery.

Hoffman theorizes that the jury could have found him guilty of involuntary manslaughter based on the commission of a misdemeanor: the jury could have found that he broke into Morton's house with the intent to commit a simple battery, an underlying crime insufficient to support an aggravated burglary. Such a finding could then produce an involuntary manslaughter conviction based on the unintentional killing of a human being committed while in

the commission of a misdemeanor enacted for the protection of human life or safety. See K.S.A. 21-3404(b).

The jury was instructed that, in order for it to convict him of involuntary manslaughter, the State would have to prove Hoffman unintentionally killed Morton in a reckless fashion. The instruction did not refer to the possibility that the killing was committed unintentionally during the commission of a misdemeanor.

The evidence supporting aggravated burglary was, however, neither weak nor inconclusive. The evidence included the fact that Hoffman took brass knuckles and a pocket knife with him to Morton's house, cut Morton's telephone and cable lines before entering the house, and picked up a kitchen knife before entering the room in which Morton was sleeping. Hoffman had already been to Morton's house and beaten him severely; he stated on the way to the second attack that he was going to "beat him up some more." In combination, this strong circumstantial evidence showed that Hoffman intended to commit an aggravated battery. See *State v. Griffin*, 279 Kan. 634, 638-39, 112 P.3d 862 (2005) (intent to commit aggravated burglary may be inferred from surrounding circumstances).

The decision by the district court not to instruct the jury on a theory of involuntary manslaughter that would include the commission of a misdemeanor did not constitute clear error.

Hoffman next argues the State failed to present sufficient evidence to convict him of felony murder because the coroner was unable to demonstrate conclusively that Morton died as the result of a stab wound. The autopsy report was inconclusive as to whether blows or stabbing caused Morton's death. Hoffman argues that, because Morton was struck on the head repeatedly during the first visit, those blows could have caused his death. If those blows caused his death, then the death was not the result of the aggravated burglary that supported the felony-murder conviction.

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could

have found the defendant guilty beyond a reasonable doubt." *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 (2007).

To support a felony-murder conviction, all that is required is proof that a felony was being committed, that the felony was inherently dangerous to human life, and that the following homicide was a direct result of the commission of that felony. *State v. Sophophone*, 270 Kan. 703, 714, 19 P.3d 70 (2001).

Morton was still alive when the second attack began and attempted to block the stabbing with his arms. During the second attack, Hoffman and Wood repeatedly stabbed and beat Morton and attempted to cut his throat. Morton apparently died during the course of the attack or soon afterwards. Even if the earlier beating might have eventually resulted in Morton's death, the second attack was clearly the direct cause of his death.

A defendant is liable for a death that occurs during the commission of a felony unless an extraordinary intervening event supercedes the defendant's act and becomes the sole legal cause of death. *State v. Jackson*, 280 Kan. 541, 547, 124 P.3d 460 (2005). The death in the present case occurred during the course of the felony and was the direct result of Hoffman's actions; no extraordinary event intervened between the second attack and Morton's death.

The evidence sufficed to establish felony murder beyond a reasonable doubt.

Hoffman next argues that the district court committed reversible error by admitting evidence under K.S.A. 60-455 showing that he and Morton had fought prior to the day of the murder. Over his pretrial objection, the district court allowed the jury to hear testimony that Hoffman had struck Morton about 1 month before the murder as evidence relating to the relationship of the parties. Hoffman did not repeat the objection at trial. He now contends the evidence served only to persuade the jury that he was the kind of person who was likely to engage in violence against Morton, and the evidence lacked relevant probative value for demonstrating that he actually committed the crimes with which he was charged.

When the trial court denies a motion in limine, the moving party must object at trial to the admission of the evidence to preserve

the issue for appeal. *State v. Ross*, 280 Kan. 878, 881, 127 P.3d 249, *cert. denied* 548 U.S. 912 (2006); K.S.A. 60-404. Hoffman made no contemporaneous objection, and the issue is not properly before the court.

In addition, an appellant has the burden of furnishing a record that affirmatively shows prejudicial error occurred in the trial court. Without such a record, the allegation of error fails. *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008). The district court order overruling the motion to suppress stated that the evidence was admissible to prove the relationship between the parties "for reasons set forth more fully in the record." In the absence of a record, it is impossible to determine what relevance the district court found and whether the district court weighed the probative value against the potential for creating undue prejudice.

Because the issue was not properly preserved and because we have no means to review the district court's analysis, we cannot conclude that the admission of the testimony relating to the prior fight constitutes reversible error.

For his next argument, Hoffman contends the district court committed reversible error by allowing the State to introduce certain autopsy photographs.

The State offered photographic exhibits 52, 53, and 56, which showed Morton's cranial cavity, his brain, and his larynx. Hoffman objected at trial, and the district court overruled the objection. He contends on appeal that the photographs were gruesome, repetitive, and prejudicial.

The standard of review for the admission of photographic evidence requires that the appellate court first determine whether the photos are relevant. If a party argues that the photographs are overly repetitious, gruesome, inflammatory, or otherwise prejudicial, the standard of review is abuse of discretion. *State v. Sappington*, 285 Kan. 176, 194-95, 169 P.3d 1107 (2007).

Photographs depicting the extent, nature, and number of wounds inflicted are generally relevant in murder cases. *State v. Adams*, 280 Kan. 494, 510, 124 P.3d 19 (2005). Although they may sometimes be gruesome, photographs that aid a pathologist in explaining the cause of death are relevant and admissible. *State v.*

*Cavaness*, 278 Kan. 469, 477, 101 P.3d 717 (2004); *State v. Deal*, 271 Kan. 483, 493, 23 P.3d 840 (2001). The State has the burden of proving all the elements of the crime charged, and photographs used to prove the elements of the crime, including the fact and manner of death and the violent nature of the crime, are relevant and admissible even if the cause of death is not contested. *Sappington*, 285 Kan. at 195; *State v. Bell*, 273 Kan. 49, 53, 41 P.3d 783 (2002). This court has held, however, that admitting such photographs is error when the they do not help explain or supplement the testimony but instead serve to "inflame the minds of the members of the jury." *State v. Boyd*, 216 Kan. 373, 377, 532 P.2d 1064 (1975).

The photographs in the present case were introduced as part of the testimony explaining the autopsy procedures and conclusions. The photograph of the skull was introduced in order to demonstrate the presence of multiple fracture lines that might not appear on X-rays. The photograph of the brain was introduced to demonstrate hemorrhaging and swelling resulting from blunt-force trauma. The photograph of the larynx was introduced to illustrate the stabbing injury to the epiglottis.

Hoffman contends that the photographs repeated other photographs showing the locations of injuries and that they are so gruesome as to inflame the jury's passion against him. A review of the photographs, however, does not show that they are extreme or gruesome. The photographs were introduced for the legitimate purpose of showing the cause of death in a case in which the cause of death was an issue at trial and remains an issue on appeal. Although other evidence, including photographs, was introduced suggesting that Morton died from blows to the head and knife wounds, the photographs at issue provided supplemental evidence relating to the specific causes of death. The district court did not err in admitting the photographs.

Finally, Hoffman contends that cumulative trial errors require reversal.

Cumulative trial errors, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the

defendant and denied the defendant a fair trial. No prejudicial error may be found under the cumulative error rule if the evidence is overwhelming against a defendant. *State v. Nguyen*, 285 Kan. 418, 437, 172 P.3d 1165 (2007).

Cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant. *State v. Davis*, 283 Kan. 569, 583, 158 P.3d 317 (2007); *State v. Jones*, 283 Kan. 186, 218, 151 P.3d 22 (2007). One error is insufficient to support reversal under the cumulative effect rule. *Nguyen*, 285 Kan. at 437.

No errors of substance that were properly preserved occurred during the course of the trial. In addition, the evidence was overwhelming that Hoffman committed felony murder. There is no prejudicial cumulative error warranting reversal in this case.

The conviction is affirmed.

JOHNSON, J., concurring: I agree with the majority's result, including its assessment that the failure to give an instruction on involuntary manslaughter while committing a misdemeanor was not clearly erroneous. I do not have a firm conviction that there was a real possibility that the jury would have returned a different verdict if that instruction had been given. The jury was presented with and rejected a number of other lesser included offense options, including reckless involuntary manslaughter.

Moreover, I find Hoffman's theory that he entered the house the second time with the intent to commit simple misdemeanor battery to be a stretch of one's imagination. He and Wood administered a rather severe beating during the first visit. I cannot see a rational jury believing that Hoffman's stated purpose to "beat him up some more" manifested an intent to merely touch Morton "in a rude, insulting, or angry manner." K.S.A. 21-3412(2) (simple battery).

I write separately to reiterate my concerns about the special rule for lesser included offense instructions in felony-murder cases, which focuses on the strength of the evidence to support the charged crime, rather than the strength of the evidence to support

the proposed lesser included offense. See *State v. Jones*, 287 Kan. 547, 198 P.3d 756 (2008) (Johnson, J., concurring).

McFARLAND, C.J., not participating.

HILL, J., assigned.