(251 P.3d 96)
No. 102,290

STATE OF KANSAS, *Appellee*, v. DYWAND BARNES, *Appellant*.

Opinion filed April 8, 2011.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Jennifer L. Myers*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, for appellee.

Before PIERRON, P.J., MARQUARDT and HILL, JJ.

PIERRON, J.: Dywand Barnes appeals from a jury conviction for aggravated robbery. Barnes argues the trial court violated his rights under the Sixth Amendment to the United States Constitution to a public trial when it improperly closed the courtroom to the public. Barnes also argues the trial court erred in failing to instruct the jury on lesser included offenses of aggravated robbery. We reverse and remand for a new trial.

On April 19, 2008, Ernest Gergick was working at his liquor store at 7832 Leavenworth Road, in Wyandotte County, Kansas. That evening, a man wearing a mask and a hoodie entered the liquor store brandishing a pistol. The man demanded that Gergick fill a white plastic grocery bag with money. Gergick testified that the gun appeared to be a .38 long barrel with a dull color. Gergick, who had previous military training, testified he believed it was a real gun. Gergick filled the bag with the money from the register. There were no pennies in the money Gergick put in the bag.

After Gergick filled the bag, the robber held the gun behind Gergick's head and cocked it. The robber demanded that Gergick

give him the money in the store's safe. Gergick took the man into the back and retrieved a lockbox which he emptied into the grocery bag. The lockbox contained no pennies. The money in the lockbox was bound with paperclips that had the amount of money in each stack marked.

The robber left the store and walked to the right. Gergick went into the back room and got a pistol, then went out to the parking lot. Gergick saw a man get out of a red car, but did not see anyone get into the red car and did not believe the driver was the robber. Gergick returned to his store and called the police, who arrived within minutes.

The police spoke to a man who lived by the store. He said he had seen a man walking from the direction of the liquor store at the time of the robbery and saw him enter a group of trees and come back out. Two other witnesses in the area saw a man and later identified him as the suspect arrested by the police, though neither could identify the man at trial. The man had asked for a ride to Speed Mart and offered the witnesses $10 or $20 in exchange for a ride. One witness also saw a black jacket hanging from a tree near the area where the man had asked for a ride.

An officer who responded to the scene began looking for a suspect and eventually was told by the witnesses that they had seen a man looking for a ride and walking south. The officer found a man walking in the direction the witnesses had told him and matching the description the witnesses had given. The officer told the man to step to the vehicle and put his hands on the hood. The man identified himself as Dywand Barnes. The officer performed a pat-down search and found what felt like wadded-up paper in his front pocket. The officer saw the tips of paper money and a bit of white plastic bag sticking out of the pocket.

The officer placed handcuffs on Barnes and removed the money. He found loose change and money bound in paperclips. The arrest occurred approximately 10 minutes after the officer arrived on the scene.

The police brought Barnes back to the store, but Gergick was unable to identify him as the robber. Gergick told police he had been robbed of approximately $400. The police recovered $385

from Barnes. Gergick recognized the money as his because it still had the paperclips with his notations. There were no pennies in the money police recovered from Barnes.

Barnes was charged with aggravated robbery, a severity level 3 person felony. The case proceeded to a jury trial on January 13-15, 2009. At trial, Barnes testified that on the day of the robbery he was picked up at his home by a friend named Thomas Webb, also known as Nudey. Barnes testified that after a few stops, Webb stopped at a gas station near Leavenworth Road and told him to get out of the car. Barnes testified he was not wearing a jacket that day.

Barnes testified he called for a ride and began walking on Leavenworth Road. He saw several police cars drive by, then saw Webb's car. Barnes testified he saw Webb throw a bag out of the car. Barnes picked up the bag. Barnes testified there was another person in the car with Webb.

The jury found Barnes guilty of aggravated robbery. The trial court sentenced Barnes to 233 months in prison to run consecutive to a sentence in a prior case.

Barnes first argues the trial court committed reversible error when it closed the courtroom during the trial in violation of his right to a public trial under the Sixth Amendment. This court has unlimited review over this issue of law. *State v. Dixon*, 279 Kan. 563, 596, 112 P.3d 883 (2005).

At the close of Barnes' case, jurors complained that Candace Brooks, Barnes' sister and a witness for his defense, had been holding up her cell phone in the courtroom. Several of the jurors believed she had taken pictures of them. The judge spoke briefly with Brooks who said that she was texting and her phone did not have video. The judge took the phone and scrolled through the pictures and several texts. The last picture on the phone had been taken on January 12, before the trial had begun.

The State asked for the courtroom to be closed, and Barnes requested a mistrial. The judge recalled the jurors who had complained about the phone and spoke to them briefly, asking if they believed they would be able to proceed with a fair trial. The jurors

responded they did not have any reservations with proceeding and conducting a fair trial.

The trial court did not believe the jurors had been intimidated and denied Barnes' motion for a mistrial. The judge then closed the courtroom and requested the family not wait on the second floor of the building. Following the closing of the courtroom, the State presented one additional rebuttal witness. The jury was instructed and closing arguments were presented in closed court.

The jury deliberated for the remainder of the day but could not come to a unanimous verdict. The judge asked the presiding juror if more time would help in their deliberation, and the presiding juror responded that it would. The next day the trial court reconvened and read the appearances. After additional jury deliberation, the jury returned a verdict of guilty. There is nothing in the record to indicate whether the court remained closed during the reading of the verdict.

There are several issues to address with regard to the issue of a public trial. First, did Barnes' failure to object at the time the trial court closed the proceedings preclude him from raising the issue on appeal? Second, what standard applies to our review of the trial court's decision to close the courtroom? Finally, did the trial court meet that burden or is Barnes entitled to a new trial?

Barnes did not object to the trial court closing the courtroom. Generally, a new theory of relief may not be raised for the first time on appeal. *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009). However, there are several generally recognized exceptions to this rule: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or assignment of a wrong reason for its decision. *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 588 (2010).

This case falls within the second exception. Both our Supreme Court and this court have recognized a defendant's right to a public trial is a fundamental right. See *State v. McNaught*, 238 Kan. 567,

577, 713 P.2d 457 (1986); *State v. Ulate*, 42 Kan. App. 2d 971, 982-83, 219 P.3d 841 (2009), *rev. denied* 291 Kan. 917 (2010). The State argues that in several jurisdictions the defendant is found to have waived his or her right to a public trial if he or she does not object to the closure. The State cites to several U.S. Supreme Court cases. First, the State cites *Peretz v. United States*, 501 U.S. 923, 936, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991), which held that certain fundamental rights may be waived where there is no objection. Second, the State cites *Levine v. United States*, 362 U.S. 610, 619, 80 S. Ct. 1038, 4 L. Ed. 2d 989 (1960), which held a defendant waived his right to object to a grand jury proceeding being opened.

Neither of those cases is applicable here. Both deal with procedural court issues that may have affected the defendant's right to a public trial. However, neither deals with the court closing the court during an actual trial. This court has repeatedly held that the right to a public trial is a fundamental right and proceeded to consider that issue on appeal, even without a contemporaneous objection at trial. See *McNaught*, 238 Kan. at 557; *Ulate*, 42 Kan. App. 2d at 982-83. We retain jurisdiction over Barnes' appeal on this issue.

Next, we must consider under what circumstances the trial court may close the courtroom. The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." However, this right is not absolute. The United States Supreme Court has found:

"[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. 39, 48, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

Our Supreme Court has also recognized this exception. See *Dixon*, 279 Kan. at 597.

The State argues that in cases of a partial closure of a courtroom, the trial court is held to a lesser standard for closing the court. The State cites to several circuit court cases that have held partial clo-

sure of a courtroom is subject to substantial rather than compelling reasons for closure. However, a partial closing as defined by two of those cases is related to who is excluded from the court rather than the duration for which members of the public are excluded from the trial. See *Nieto v. Sullivan*, 879 F.2d 743, 753 (10th Cir. 1989) (only the defendant's relatives were excluded for one witness' testimony); see also *United States v. Sherlock*, 865 F.2d 1069, 1077 (9th Cir. 1989) (only the defendant's relatives were excluded during portions of the trial).

This was not a partial closing. One of the State's cases reaffirms that in cases such as this, the overriding interest test applies. In *Davis v. Reynolds*, 890 F.2d 1105, 1109-10 (10th Cir. 1989), the court found that the standard for partial closings only applies when certain members of the public are excluded for narrowly stated reasons. In cases where the entire gallery is removed, even for only one witness, the overriding interest test applies.

The standard that applies to this case is whether the trial court had an overriding interest in closing the courtroom. The final issue we must decide is whether that overriding interest existed. Here, it did not.

The State argues that the spectators abused their privileges to observe the witnesses and, therefore, the trial court rightly closed the courtroom. The State cites to *United States v. Fay*, 350 F.2d 967, 970 (2d Cir. 1965), which found that the trial court had the power to remove unruly spectators.

However, the standard for denying a defendant his or her right to a public trial requires that the decision be no broader than necessary and the court consider reasonable alternatives to closure. Barnes correctly argues the trial court failed to consider reasonable alternatives to closing the courtroom, including banning cell phones from the courtroom.

The trial court could also have removed only Brooks without closing the entire proceeding to the public. The court had satisfied itself that Brooks was not taking pictures of the jury. If the court believed Brooks was acting in an unruly manner, which it may well have, its best option would have been to tell her to leave while allowing the rest of Barnes' friends and family to remain.

Barnes cites *Dixon* to support his contention that the closure of the courtroom is reversible error. In *Dixon,* our Supreme Court found that where the trial court closed a courtroom during the reading of a verdict to prevent prejudicing the jury in another case, it was reversible error. 279 Kan. at 599-601. This case differs from *Dixon* in two respects. First, in *Dixon* the court was concerned with prejudice to a jury not sitting on Dixon's case. Second, the *Dixon* court closed the court for the reading of the verdict. The record in this case is not clear on whether the court remained closed for the reading of the verdict.

However, it does not matter if the trial court was closed for just the testimony of one rebuttal witness and the closing arguments, and not for the reading of the verdict. The interest in having the public be allowed to see witness testimony is a fundamental and established right. See *Estes v. Texas,* 381 U.S. 532, 588, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965) (Harlan, J., concurring) ("Essentially, the public trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings.").

The trial court erred in closing the court when less extreme and easily implemented methods for ensuring a fair trial existed. The violation of a defendant's right to a public trial is never harmless error. *Dixon,* 279 Kan. at 599. For this reason, we cannot declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. Therefore, we must remand this case for a new trial.

Barnes next argues the trial court erred in failing to instruct the jury on the lesser included offenses of theft and robbery. Since this matter is subject to review, we will address this issue.

Barnes did not request the lesser included offenses instruction at trial. Whether a crime is a lesser included offense of another is a question of law over which this court has unlimited review. *State v. Gallegos,* 286 Kan. 869, 873, 190 P.3d 226 (2008).

"If a defendant does not object to the trial court's giving or failure to give an instruction on lesser included offenses, it is reversible error only if the giving of the instruction or the failure to

give the instruction was clearly erroneous. [Citation omitted.]" *State v. Hoffman*, 288 Kan. 100, 104, 200 P.3d 1254 (2009).

"When the defendant fails to request a lesser included offense instruction, the failure to give the instruction is clearly erroneous 'only if the appellate court reaches a firm conviction that, had the instruction been given, there was a real possibility the jury would have returned a different verdict. [Citation omitted.]' [Citation omitted.]" *Hoffman*, 288 Kan. at 104.

In this case, there was no evidence to support the lesser included offenses of theft or robbery. An instruction for robbery would have allowed the jury to conclude that Barnes had taken the property of another by force or threat of bodily harm, but without a dangerous weapon. See K.S.A. 21-3426. However, the only evidence presented was that the robber carried and used a gun to threaten Gergick. Gergick testified the robber pointed a gun at him and cocked it. He also testified that based on his previous military training he believed the gun to be real. No evidence was presented to contradict Gergick's testimony. Barnes' only defense was that he never went to the liquor store and did not rob it. Further, if the user intended to convince the victim it was a dangerous weapon and the victim reasonably believed that the weapon used was a dangerous weapon, that belief is sufficient to prove aggravated robbery. *State v. Colbert*, 244 Kan. 422, Syl. ¶ 3, 769 P.2d 1168 (1989).

If the jury believed that Barnes was not at the liquor store, it would have found him not guilty. However, if the jury believed Barnes had committed the robbery, no testimony was given to support a verdict that he had taken the money by force without a dangerous weapon.

Barnes also argues the jury should have been instructed on the lesser included offense of theft. A lesser included offense is a lesser degree of the same crime or a crime where all elements of the lesser crime are identical to some of the elements of the crime charged. K.S.A. 21-3107(2)(a)-(b). Different forms of theft are defined in K.S.A. 21-3701. Not all are lesser included offenses of robbery. Only theft under 21-3701(a)(1) has been found to be a lesser included offense of robbery or aggravated robbery. See *State v. Sandifer*, 270 Kan. 591, 600, 17 P.3d 921 (2001). Barnes only

argues that to sustain a theft charge, the jury would have to find that Barnes obtained control over property knowing the property to have been stolen. This case is theft as defined by K.S.A. 21-3701(a)(4).

The elements of theft under K.S.A. 21-3701(a)(4) are not identical to those of robbery. This is similar to the ruling in *State v. McKissack*, 283 Kan. 721, 725-29, 156 P.3d 1249 (2007), in which our Supreme Court found that criminal deprivation of property was not a lesser included offense of theft because it failed the strict elements test of K.S.A. 21-3107.

Therefore, this type of theft is not a lesser included offense of robbery. Barnes was not entitled to an instruction on theft or robbery. The trial court did not err in failing to instruct the jury on the crimes of robbery or theft.

Reversed and remanded for a new trial.