STATE OF KANSAS, *Appellee* v. NATHANIEL JOHNS, *Appellant*.

No. 57,549

STATE OF KANSAS, *Appellee*, v. TOMMY KINGYON, *Appellant*.

(699 P.2d 538)

Opinion filed May 10, 1985.

*Howard Washburn*, of Kansas City, argued the cause and was on the brief for appellant Nathaniel Johns.

*Timothy M. Alvarez*, of Kansas City, argued the cause and was on the brief for appellant Tommy Kingyon.

*Nick A. Tomasic*, district attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Nathaniel Johns and Tommy Kingyon were codefendants in a joint jury trial. Each was convicted of eight felonies—unlawful possession of a weapon within five years after the conviction of a felony (K.S.A. 21-4204[1][b]); felony theft (K.S.A. 1984 Supp. 21-3701); aggravated assault (K.S.A. 21-3410); felony murder (K.S.A. 21-3401); two counts of aggravated battery (K.S.A. 21-3414); and two counts of aggravated robbery (K.S.A. 21-3427). The matter is before us on the appeals of these codefendants, which were consolidated for oral argument.

On May 25, 1984, Toney's Market, situated at Third and Parallel streets, Kansas City, Kansas, was the scene of an armed

robbery. Money was taken from the cash register and from the persons of a clerk and the store owner by two black males. The clerk was shot in the jaw by one of the robbers. At trial the robbers were identified as the codefendants herein. The getaway automobile was a brown Pontiac already occupied by two other individuals. A high-speed chase ensued which ended when the Pontiac struck a vehicle at the intersection of Eleventh and Parallel streets. Kate Wallace, a passenger in the vehicle with which the Pontiac collided, died as a result of injuries received in the collision. Other facts will be stated as necessary to the discussion of the particular issues on appeal.

The first issue is whether the jury was properly instructed on felony murder.

The codefendants object to the emphasized portion of the following instruction (Instruction No. 10):

"Each of the defendants is charged in Count VIII with the crime of felony murder. Each has pled not guilty. To establish this charge each of the following claims must be proved:

"A. That one or more of the defendants killed Kate Wallace.

"B. That such killing was done while in the commission of one of the crimes charged in Instruction[s] No. 3, 5, 6, 7, 8, or 9, *or during its immediate aftermath.*

"C. That such killing could reasonably be foreseen as a result of the actions of one or more of the defendants.

"D. That this act occurred on or about the 25th day of May, 1984, in Wyandotte County, Kansas." (Emphasis supplied.)

The phrase "or during its immediate aftermath" is not found in PIK Crim. 2d 56.02 on felony murder, or in K.S.A. 21-3401. The codefendants contend its inclusion in the jury instruction was error.

*State v. Rider, Edens & Lemons,* 229 Kan. 394, Syl. ¶ 3, 625 P.2d 425 (1981), is particularly significant in our determination of this issue. The facts, rationale, and holding of Rider are set forth as follows:

"In *State v. Hearron,* 228 Kan. 693, Syl. ¶¶ 1, 2, 619 P.2d 1157 (1980), we discussed the established law of this state—that flight from the scene of the crime may be considered as a part of the *res gestae* of the crime. We stated:

" 'Although K.S.A. 21-3401 does not specifically include, within the felony-murder rule, the killing of another during flight from the scene of the crime, a killing during flight may constitute felony murder.' Syl ¶ 1.

" 'Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is

a part of the felony and, therefore, subject to the felony-murder rule. Whether the underlying felony had been abandoned or completed prior to the killing so as to remove it from the ambit of the felony-murder rule is ordinarily a question of fact for the jury to decide.' Syl. ¶ 2.

". . . The murder occurred during the escape from the commission of a forcible felony—aggravated robbery. The evidence of the aggravated robbery was neither weak nor inconclusive. The evidence proved the appellants conspired to rob the Hudson Pharmacy. The appellants implemented their plan by obtaining the getaway vehicle, arming themselves, and proceeding to the pharmacy. Rider and Lemons parked the car, crossed Lewis Merriman's yard, and entered the pharmacy. After several intense minutes during the actual robbery, the two men fled with the drugs and money. Fearful of pursuit and discovery, Rider shot at Lewis Merriman, the elderly man who yelled as they fled across his yard. Within seconds of firing that shot, Rider and Lemons in the getaway car nearly collided with Edwards' Cadillac. Edwards' home was in the same block as Merriman's home, and there is nothing in the record to indicate whether Edwards did or did not observe Rider and Lemons exit the pharmacy, or shoot at Merriman. We need not establish the reason why Edwards pursued the appellants. The fact is, Edwards pursued the getaway car to Corky's IGA. According to John Leisek, Edens told him that Corky's IGA was the planned rendezvous point. Edwards was fatally shot in the alley behind Corky's IGA.

"The murder occurred within the *res gestae* of the aggravated robbery. There was no break in the chain of events. The flight to Corky's IGA was one continuous transaction following the Hudson Pharmacy robbery. The appellants did not abandon their original criminal activity until after the events behind Corky's. The murder was closely connected to the aggravated robbery, in time—approximately fifteen minutes, place—a few blocks, and continuity of action. The appellants were in the getaway car, armed with the weapons used in the robbery, and in possession of the drugs and money, when the murder occurred.

"We believe the evidence was conclusive that the murder occurred during the *res gestae* of the aggravated robbery. Hence, the trial court need not have instructed as it did in Instructions No. 8 and No. 11, that such determination was a fact question for the jury. The pertinent portion of Instruction No. 8 which was unnecessary is:

" 'If however, you find that the aggravated robbery had terminated and the killing was not within the course of the aggravated robbery but arose independently thereof, only the party who is the cause of the murder is to be held responsible.'

## Instruction No. 11 was unnecessary. It stated:

" 'You are instructed that the crime of aggravated robbery continues through the escape from that crime. It is a question of fact for the jury to determine when the escape ended.'

We also conclude the giving of those instructions was not prejudicial to the appellants." 229 Kan. at 399-400.

See also *State v. Lashley,* 233 Kan. 620, 631, 664 P.2d 1358 (1983), wherein we stated:

"*Time, distance, and the causal relationship* between the underlying felony and killing are factors to be considered in determining whether the killing is a part of the felony and therefore subject to the felony-murder rule. *Whether the underlying felony had been abandoned or completed prior to the killing* so as to remove it from the ambit of the felony murder rule is ordinarily a *question of fact for the jury* to decide. *State v. Hearron,* 228 Kan. 693, Syl. ¶ 2, 619 P.2d 1157 (1980). When the evidence is conclusive, as a matter of law, and the murder occurred within the *res gestae* of the crime, the trial court need not instruct that determination of whether the murder occurred within the *res gestae* is a fact question for the jury. *State v. Rider, Edens & Lemons,* 229 Kan. 394, Syl. ¶ 5, 625 P.2d 425 (1981)." (Emphasis supplied.)

At this point the relevant facts in the matter before us need to be stated in some detail. Shots were fired in Toney's Market during the robbery. As the two robbers ran from the market to their automobile, they were seen by a Wyandotte County process server who relayed a description of the vehicle and a partial license number to the dispatcher. A Kansas City, Kansas, police detective was having lunch near Toney's Market and, upon hearing the shots, rushed outside and saw a robber jump into the vehicle and speed south on Third Street toward the Intercity Viaduct. A vehicle description, partial Missouri tag number, and direction of travel were relayed to the police dispatcher by use of the officer's walkie-talkie.

An officer in a nearby patrol car heard the dispatch and immediately proceeded to the Intercity Viaduct entrance ramp where he pulled in behind a vehicle matching the suspect vehicle's description and license number. Approximately one minute had elapsed between receipt of the dispatch and the officer's first observation of the suspect vehicle. The suspect vehicle left the ramp and sped away with the officer in pursuit. A high-speed chase resulted with the suspect vehicle running various traffic signals. The chase ended four minutes later in a collision when the suspect vehicle ran a red light and struck the Wallace vehicle in the intersection of Eleventh and Parallel. Defendant Johns was driving at the time of the crash.

Although the instructional format used in *State v. Rider, Edens and Lemons,* 229 Kan. 394, previously cited herein, would have been preferable, we find no reversible error in the instruction on felony murder given herein. The evidence amply supports a finding the Wallace death occurred within the *res gestae* of the

robbery. The fleeing vehicle was out of the detective's sight only very briefly before it was spotted by the patrol officer. The continuity of action referred to in *State v. Rider, Edens and Lemons* was clearly present under the facts herein.

For his second issue defendant Johns contends the trial court erroneously instructed the jury on voluntary intoxication. The standard instruction on this subject (PIK Crim. 2d 54.12) was given. The instruction states, in part, "Voluntary intoxication *is not a defense* to a criminal charge . . . ." (Emphasis supplied.) Defendant Johns contends the instruction should have read "Voluntary intoxication *may or may not* be a defense to a criminal charge." The instruction given is in conformity with K.S.A. 21-3208, which provides that an act committed in a state of voluntary intoxication is *no less criminal* because of the actor's state, but the ability to form the necessary intent needed to convict the actor for a crime (an element of which is a specific intent) may be impaired by reason of the actor's intoxication. See *State v. Sterling,* 235 Kan. 526, 680 P.2d 301 (1984), for a full discussion of the subject of criminal intent and the effect thereon of voluntary intoxication.

We conclude this issue is without merit.

For his third issue defendant Johns contends the trial court erred in permitting a witness to testify who had violated the court's sequestration order.

The court ruled it would sequester witnesses at the beginning of the trial. Katherine Walker, a State's witness, was present in the courtroom for her husband's testimony, a circumstance of which the attorneys were not aware. The problem was brought to the court's attention prior to her testimony by the attorney for defendant Johns, who, after some preliminary questions, objected to Mrs. Walker's testimony based on violation of the witness exclusion rule. The court permitted her to testify, but limited her testimony to matters not covered by her husband's testimony. Mr. Walker was inside Toney's Market for the entire robbery and shooting and testified only to the matters of which he was aware—those events occurring inside the store. Mrs. Walker testified to the events she observed while outside Toney's Market. She was leaving the store when the robbers entered. The trial court excluded her testimony until the time she actually left the building. Ordinarily where a witness vio-

lates a court order separating witnesses without the knowledge of the party or his counsel, the witness should be permitted to testify and it is only where the evidence shows that the party who desires to call the witness knew and participated in the violation of the separation order that the court should exclude the witness' testimony. *State v. Carney*, 216 Kan. 704, 533 P.2d 1268 (1975).

The evidence shows the prosecution was not aware of Mrs. Walker's presence in the courtroom. Violation of a court order separating witnesses does not ordinarily disqualify a witness from testifying and the trial court, in its discretion, may admit the testimony. *State v. Handley*, 234 Kan. 454, 673 P.2d 1155 (1983). We conclude the trial court did not abuse its discretion in permitting the witness to testify.

The codefendants raise numerous other points of alleged trial court error and claim abuse of discretion by the trial court. We have carefully considered all issues raised in the appeals herein and find no reversible error in same, either individually or collectively.

The judgments are affirmed.