No. 100,512

STATE OF KANSAS, *Appellee*, v. GREGORY L. BERRY, *Appellant*.

(254 P.3d 1276)

Opinion filed July 22, 2011.

*Heather R. Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Gregory L. Berry directly appeals his conviction and sentence for first- degree felony murder. Berry struck and killed another motorist during a high-speed getaway from a traffic stop. He was apprehended, and cocaine was discovered. The underlying felony for the first-degree felony-murder conviction was possession of cocaine. At trial, Berry requested lesser included offense instructions for second-degree reckless murder, involuntary manslaughter, and vehicular homicide. His request was denied pursuant to the judicially created felony-murder instruction rule, which treats felony murder differently when considering whether to instruct a jury on lesser included offenses. See *State v. Jones*, 287 Kan. 547, 556-57, 198 P.3d 756 (2008). We have jurisdiction under K.S.A. 22-3601(b)(1) (direct appeal for conviction of an off-grid crime; life sentence).

We reverse Berry's conviction and sentence on the felony-murder charge and remand for a new trial because we hold the judicially created felony-murder instruction rule must be abandoned. We do so after carefully reviewing the rule's history and concluding that the rationale for adopting it was flawed. We hold that the better course is to follow K.S.A. 22-3414(3)—the statute governing when lesser included offenses must be issued. That legislative mandate provides no exception for felony murder and makes no allowance for the felony-murder instruction rule. We explain our decision below.

### Factual and Procedural Background

A jury convicted Berry of felony murder, possession of cocaine, and driving while a habitual violator. He pleaded no contest to criminal possession of a firearm. These convictions stem from a chain of events beginning at 1:45 a.m. on November 25, 2004, when a Sedgwick County Sheriff's Deputy driving a marked patrol vehicle spotted a dark-colored Cadillac Berry was driving. The deputy observed what he believed to be an illegitimate 30-day license tag on the vehicle. The Cadillac pulled into a motel parking lot before the deputy could initiate a stop. The deputy waited out of view for the Cadillac to continue down the street. When the Cadillac exited the parking lot, the deputy followed.

Both cars turned and traveled about a block before the deputy activated his patrol car's emergency lights. The Cadillac pulled over. The deputy exited his vehicle and approached. He examined the 30-day tag more closely. It appeared to be legitimate. The deputy then went to the driver's side window and asked Berry for his driver's license and insurance. Berry did not respond verbally. He looked around, put his vehicle into drive, and sped away. The deputy then ran back to his vehicle and pursued Berry with the patrol car's emergency lights and siren activated.

The deputy testified at trial that his vehicle's speed reached 70 miles per hour, which was still not enough to overtake Berry, who kept pulling further ahead. Eventually, the deputy slowed and deactivated his lights and siren because he knew a nearby bar was about to close. The deputy said he was concerned the high-speed chase would endanger the departing patrons, so he hoped turning off his emergency equipment would cause Berry to slow down. The deputy lost sight of the Cadillac for 30 to 45 seconds, but then saw a large plume of smoke and dust near an approaching intersection. When the deputy arrived, he saw the aftermath of a collision involving the Cadillac and a Chrysler driven by Vicki K. Brown. The Chrysler was struck on the passenger-side door, with the driver trapped inside. Brown died from injuries sustained in the accident.

When a second deputy arrived at the scene, he saw Berry, who had exited his vehicle and was wearing a black coat, running out

of a ditch. Berry collided with the second deputy's vehicle, struck the side mirror, but continued to evade police. A short time later, Berry barged into Fernando Mendoza's house uninvited. He did not know Mendoza or his family. Mendoza testified Berry said he needed a place to rest, displayed a "big ole wad of money," and offered to pay to stay there. Berry told Mendoza the police were after him and that he was a drug dealer. Mendoza's family called police. When Berry was apprehended, he was not wearing a black coat.

Berry consented to a medical assessment to determine if he was injured. He was taken to a hospital, examined, and released to another deputy. But as Berry stood up from the examining table and turned to be handcuffed, a clear plastic bag containing a white rock-like substance fell from his boxer shorts, landing on the floor between his legs. The bag held 9.31 grams of cocaine. A second clear plastic bag with white rocks was found by a K-9 unit searching in a field near where the unit's dog identified Berry's trail. The second bag contained 1.8 grams of cocaine. At another location in the field, a black coat was found. Footprints also were visible, with the trail ending at Mendoza's house.

Berry was charged with: (1) first-degree felony murder based on the underlying felonies of possession of cocaine with intent to sell or, in the alternative, possession of cocaine; (2) aggravated burglary; (3) felony obstructing official duty; (4) possession of cocaine with intent to sell; (5) possession of cocaine; (6) criminal possession of a firearm; and (7) driving while a habitual violator.

Before trial, Berry filed a motion to dismiss the felony-murder charge based on two premises. First, Berry argued the victim's death was not within the res gestae of the alleged cocaine possession. He claimed that crime was complete before the car chase began, so the victim's death did not occur during commission of a felony as required by the felony-murder statute. See K.S.A. 21-3401(b). Second, Berry argued there was no causal connection with the accident because at the time Berry's car struck and killed the victim, the deputy had abandoned pursuit and Berry was no longer running from police. The motion was overruled. Subsequent motions on the same grounds for judgment of acquittal were denied

twice more. One occurred at the close of the State's case and the other at the conclusion of all the evidence.

The jury convicted Berry of felony murder, possession of cocaine, and driving while being a habitual violator. He pled no contest to criminal possession of a firearm. He was acquitted of aggravated burglary for the Mendoza home intrusion, felony obstructing official duty, and possession of cocaine with intent to sell. He was sentenced to life imprisonment, with a mandatory minimum of 20 years for the felony-murder conviction. He received a consecutive 15-month sentence for possession of cocaine. The remaining sentences ran concurrently to the felony-murder sentence.

Berry filed a timely appeal but failed to properly docket it, resulting in its dismissal. The district court later held a hearing under *State v. Ortiz,* 230 Kan. 733, 640 P.2d 1255 (1982) (recognizing limited exceptions to permit untimely completion of appeal), and found Berry entitled to continue with his appeal.

Berry raises nine issues: (1) whether there was sufficient evidence of a direct causal connection between the cocaine possession and the killing to support the felony-murder charge; (2) whether Berry was entitled to jury instructions on lesser included offenses of felony murder; (3) whether the district court was required to issue an additional instruction on causation for felony murder; (4) whether the district court improperly restricted Berry's closing argument; (5) whether the prosecutor committed misconduct by misstating the law on causation during closing arguments; (6) whether Berry preserved for appeal an ineffective assistance of counsel claim; (7) whether the district court erred by failing to raise *sua sponte* an ineffective assistance of counsel inquiry; (8) whether cumulative error deprived Berry of his right to a fair trial; and (9) whether Berry's sentence was unconstitutional because his criminal history score was not proven to the jury.

We address first Berry's claim that the felony-murder charge should have been dismissed before trial because there was insufficient evidence of a causal connection between the traffic fatality and the underlying felony (possession of cocaine). We decide that issue against Berry. Next we consider whether the jury should have been instructed on lesser included offenses. Our decision to aban-

don the felony-murder instruction rule in favor of following K.S.A. 22-3414(3) resolves that decision in Berry's favor and renders moot the remaining issues. But we will discuss briefly his arguments relating to his request for an additional causation instruction and the prosecutor's closing argument because it may be helpful on retrial. Additional facts are included below as required.

## SUFFICIENCY OF THE EVIDENCE

Berry argues first that the district court erred by denying his pretrial motion to dismiss the felony-murder charge. He contends there was insufficient evidence of a causal connection between the traffic fatality and the cocaine possession charge.

K.S.A. 21-3401(b) defines felony murder as "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from an inherently dangerous felony, as defined in K.S.A. 21-3436." Possession of cocaine is an inherently dangerous felony. See K.S.A. 21-3436(a)(14) (any felony under K.S.A. 65-4160); K.S.A. 65-4160(b) (person has prior conviction under this section or substantially similar offense and possesses drug listed in K.S.A. 65-4107). We note K.S.A. 21-3436 has since been amended, and K.S.A. 65-4160 has been repealed and replaced with K.S.A. 2010 Supp. 21-36a06.

The felony-murder statute requires two causation elements. First, the death must be within the res gestae of the underlying crime, regardless of the sequence of events leading to the death. *State v. Beach*, 275 Kan. 603, 609-10, 67 P.3d 121 (2003) (citing *State v. Jacques*, 270 Kan. 173, 189-90, 14 P.3d 409 [2000]). We define res gestae in the felony-murder context as "acts done before, during, or after the happening of the principal occurrence when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence." *State v. Jackson*, 280 Kan. 541, 545, 124 P.3d 460 (2005). Second, there must be a direct causal connection between the felony and the homicide. *Beach*, 275 Kan. at 612. Our case law finds this direct causal connection exists unless an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death. 275 Kan. at 612.

In his motion to dismiss, Berry argued the fatality was not within the res gestae of the cocaine possession. He claimed the cocaine possession was complete before the death occurred. He also argued there was insufficient evidence of a causal connection because at the time Berry's car struck the victim's vehicle, the deputy had abandoned pursuit and Berry was no longer running from police.

But Berry did not couch this argument in terms of an intervening or superseding event. He simply argued there was no causal connection because he claims the officer quit the chase before the killing. Berry recites no evidence to support his assertion that he was no longer running from police or that the police were no longer pursuing him. The only evidence in the record is that the officer deactivated his emergency lights and sirens in the hope that Berry would slow to a safer speed.

No doubt recognizing this weakness now on appeal, Berry abandons the res gestae claim and solely argues there was insufficient evidence to make a causal connection between the cocaine possession and the fatality. And in doing so, he offers this court a different theory from what he advanced to the district court. He contends now it was his decision to evade the traffic stop that was the legal cause of the victim's death and this decision was unrelated to the cocaine possession. To support this, Berry notes he fled after the officer requested his driver's license and insinuates his effort to escape was to avoid being caught while driving on a suspended license—not because he possessed more than 11 grams of cocaine.

*Standard of Review*

The standard of review for denial of a motion to dismiss depends on the ground on which dismissal was sought. When insufficient evidence is the basis alleged, our review "asks whether review of all the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Garcia*, 282 Kan. 252, 259-60, 144 P.3d 684 (2006).

*Discussion*

A defendant can avoid responsibility for a death occurring during the commission of a felony " 'if an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death.' " *Beach,* 275 Kan. at 612 (quoting *State v. LaMae,* 268 Kan. 544, 555, 998 P.2d 106 [2000]). In this context, the three factors examined are time, distance, and the causal relationship between the underlying felony and the killing. 275 Kan. at 613. Two prior cases dealing with sufficiency of evidence of a causal connection are relevant: *Beach,* 275 Kan. at 611-14, and *Jackson,* 280 Kan. at 546-49. We detail both cases below to explain our rationale in denying Berry's argument.

In *Beach,* the defendant was convicted of felony murder based on the underlying felony of sale of methamphetamine. The defendant coordinated the sale. She drove a companion and the supplier to a house where the transaction was to take place. Then, Beach met the victim and led him back to that location. Beach took the money for the drugs from the victim and walked up to the house. Then she heard her companion shoot the victim and another person. Beach left with the shooter. Beach later claimed she did not know her companion was planning to shoot the victim. She argued the plan and actions of her companion and the supplier caused the victim's death, so their decision to kill the victim was an extraordinary intervening event.

In analyzing the three factors, the *Beach* court held the time criteria was satisfied because the two events took place simultaneously. The distance factor was satisfied because the defendant chose the location for the drug transaction and the victim waited there in the car for her to complete it. The court then found the events were causally related—the third factor—because Beach told the shooter about the drug sale and that the victim was carrying a lot of cash. 275 Kan. at 613-14.The court reasoned that "[a] person with a large amount of cash intent on engaging in an illegal transaction is a foreseeable target of violent crime." 275 Kan. at 614.

The facts in *Jackson* are very similar. Jackson's felony-murder conviction was based on the underlying felony of selling cocaine.

The victim contacted a third party looking for drugs. That person contacted Jackson, who secured the drugs through two other persons. Jackson then picked up the drug suppliers and suggested they meet the victim at a house. When they could not enter, the victim and one of the suppliers got into a fight, and the victim was shot and killed. To avoid the felony-murder charge, Jackson argued the supplier's act of shooting the victim was an extraordinary intervening event that broke the causal connection between the drug transaction and the murder. Citing *Beach*, the *Jackson* court rejected that argument. It found the time factor supported conviction because the victim was shot while the victim and the supplier were in the process of completing the drug transaction. It found the distance factor satisfied because a conversation regarding the transaction occurred a few feet from the shooting. As to the causal relationship, the court noted the defendant arranged the drug transaction and was aware selling drugs was a dangerous business in which most people carry guns. The court held the violence was foreseeable and the jury could infer a causal connection. 280 Kan. at 548-49.

Turning to the facts here, it is immediately apparent the posture is different. In Berry's case, the underlying felony is drug possession (not sale) and Berry was the only participant. But the time and distance factors still support conviction. The time factor is satisfied because Berry had the cocaine in his possession when the accident happened. The distance factor is satisfied because the accident and possession occurred at the same location. The causal connection factor is also clear because it is foreseeable that a person possessing more than 11 grams of cocaine would attempt to flee from law enforcement officers. See, *e.g., State v. Anderson*, 281 Kan. 896, 899, 136 P.3d 406 (2006) (Defendant attempted to flee from police on foot before arrest and tried to discard baggies of drugs near a dumpster and hide others in his shoe.); *State v. Le*, 260 Kan. 845, 845-46, 926 P.2d 638 (1996) (Defendant attempted to flee a traffic stop and was later found in possession of marijuana.). To be sure, there is foreseeable danger when engaging in a high-speed motor vehicle chase with law enforcement officers. See, *e.g., State v. Johns*, 237 Kan. 402, 403, 699 P.2d 538 (1985)

(Fatality collision resulted from defendants attempting to elude police after committing an armed robbery.); see also *Sykes v. United States*, No. 09-11311, 2011 WL 2224437, at *7 (U.S. 2011) (Risk of violence and physical injury are inherent in vehicle flight.).

Put simply, it belies common sense to argue Berry's decision to flee the traffic stop was limited to just one of his crimes and not the others. There is no evidence to reasonably determine Berry's flight was due to the driver's license violation to the exclusion of the more serious crimes involved here. We find it reasonable for a jury to conclude Berry fled because of all his crimes: the suspended license, illegal possession of a firearm, and possession of cocaine. And considering his attempts to discard and hide the cocaine after the accident and his statement to Mendoza that he was a drug dealer, a rational factfinder, based on all the evidence viewed in a light most favorable to the prosecution, could have concluded that Berry fled the deputy and initiated a dangerous high-speed car chase specifically to avoid being caught with a substantial quantity of cocaine. We find the evidence sufficient to support the causal connection required for the felony-murder conviction.

### LESSER INCLUDED OFFENSES FOR FELONY MURDER

Berry next argues he was entitled to instructions on the lesser included offenses of second-degree reckless murder, involuntary manslaughter, and vehicular homicide. He concedes the evidence of the underlying felony (possession of cocaine) is strong, but asserts he still was entitled to the lesser included offense instructions because the jury could have found no causal connection between the felony and the killing. The State responds that under the applicable test used in determining whether lesser included offense instructions are required in a felony-murder case, the evidence of the felony must be weak, inconclusive, or conflicting to justify giving those instructions. The State argues the evidence of the felony is strong. The district court overruled Berry's request.

### Standard of Review

Our initial inquiry is whether the court-made felony-murder instruction rule violates K.S.A. 22-3414(3). Interpretation of a statute

is a question of law, and the standard of review is unlimited. *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009).

*Discussion*

K.S.A. 22-3414(3) directs trial courts to issue lesser included offense instructions "where there is some evidence which would reasonably justify a conviction of some lesser included crime." Under that statute, the analysis focuses on the evidence supporting the lesser offense, and evidence of the higher offense is considered only in determining whether that evidence would allow a jury to reasonably convict of a lesser included offense. We have held in nonfelony-murder cases that the statute triggers lesser included offense instructions upon the request of the defendant, if the jury could reasonably convict the defendant of the lesser included offense based on the evidence presented. *State v. Houston*, 289 Kan. 252, 273-74, 213 P.3d 728 (2009).

Notably, K.S.A. 22-3414 does not exclude felony murder cases from its jury instruction requirements. And despite the statute's provisions, felony-murder cases have not followed the statutory model. Instead, these cases have been analyzed under a court-made rule, commonly referred to as the felony-murder instruction rule. See *State v. Becker*, 290 Kan. 842, 856-57, 235 P.3d 424 (2010) (holding the statute governing lesser included offense instructions does not apply to felony murder); *State v. Jones*, 287 Kan. 547, 558, 198 P.3d 756 (2008) (Johnson, J., dissenting).

Under the felony-murder instruction rule, lesser included offense instructions have been required only when evidence of the underlying felony is weak, inconclusive, or conflicting. *State v. Hoffman*, 288 Kan. 100, 105, 200 P.3d 1254 (2009). To determine if the evidence is strong or weak, appellate courts have considered whether a reasonable trier of fact could determine the felony was committed beyond a reasonable doubt. If so, the evidence of the felony is not deemed weak or inconclusive. *State v. Dixon*, 289 Kan. 46, 63, 209 P.3d 675 (2009). But if evidence of the underlying felony is weak, the court has examined whether enough evidence exists to support a conviction for a lesser included offense. *Jones*, 287 Kan. at 557.

The court-made felony-murder instruction rule has its detractors. See *Jones*, 287 Kan. at 558 (Johnson, J., concurring) ("The felony-murder [instruction] rule turns the [ordinary nonfelony-murder] analysis on its head by focusing on the evidentiary support for the charged crime, rather than looking at the evidence to support the lesser included crime."); Note, *Felony Murder in Kansas—The Prosecutor's New Device: State v. Goodseal*, 26 Kan. L. Rev. 145, 155 (1977).

Acknowledging this criticism, as well as the clarity provided by K.S.A. 22-3414(3), we take the opportunity presented by Berry's arguments to revisit this court-made rule. At its conclusion, our review shows the prior analysis leading to the felony-murder instruction rule is flawed. We find that lesser included offense instructions in felony-murder cases must be issued as directed by the statute and the case law applying its provisions. To explain our reasoning, we explore the early case law leading to the emergence of the current felony-murder instruction rule. We next apply our conclusion to Berry's case and then address how other cases still pending or not yet final are affected by our holding.

(1) *Early case law*

Since 1868, trial courts have been statutorily required in all criminal cases to instruct juries on "all matters of law which are necessary for their information." G.S. 1868, ch. 82, § 236. This statute was held to require instructions on lesser offenses if even "slight evidence" was produced to support a conviction of the lesser offense. *State v. Woods*, 105 Kan. 554, 558, 185 P. 21 (1919) (citing *State v. Clark*, 69 Kan. 576, 77 P. 287 [1904]). This statutory rule—as well as our courts—treated felony murder the same as other offenses, even though the courts discerned two categories of felony-murder cases.

In the first category, the evidence was undisputed that a homicide occurred during commission of a felony, but the defendant typically claimed innocence of all charges. Under these circumstances, the court reasoned lesser included offense instructions were not required because the defendant was either guilty of both the felony and the murder, or innocent. See *State v. Roselli*, 109

Kan. 33, 40, 198 P. 195 (1921) (Defendant and a companion killed a merchant while robbing a Kansas store. Lesser included instructions to felony murder were not required because the defendant claimed he was in Missouri and not present at the robbery.).

The second category was more varied because the defendant typically admitted guilt for some offense but argued that misconduct did not amount to felony murder. For example, in *State v. Severns*, 158 Kan. 453, 148 P.2d 488 (1944), the defendant was convicted of felony murder for the death of an 8-year-old girl. The defendant admitted he committed a physical assault but argued he was entitled to a first-degree manslaughter charge because he claimed he was punishing the child for lying and did not intend to kill her. The *Severns* court held that under this defense theory, the jury could have concluded the defendant did not intend the child's death and the crime perpetrated was a misdemeanor. As such, the defendant was entitled to instructions on all lesser degrees of homicide. 158 Kan. at 458-59.

Notably, the *Severns* court found the weight of the evidence irrelevant, stating the "fact that the court may deem the evidence supporting a lesser degree to be weak and inconclusive does not warrant it in refusing the instruction, for the weight of the evidence is for the jury." 158 Kan. at 458; see also *State v. Bradford*, 219 Kan. 336, 342-44, 548 P.2d 812 (1976) (Second-degree murder instruction was proper in a felony-murder case because the jury could have concluded defendant did not commit robbery when evidence was introduced that the deceased had a large sum of money and a pad of paper when he was killed and defendant was found later that morning with only $5 and the pad of paper.).

The first case in which this court found lesser included offense instructions were not required despite some evidence supporting lesser charges was *State v. Germany*, 173 Kan. 214, 245 P.2d 981 (1952). *Germany* is striking because it recites no case law or statutory authority for its holding. It simply recites the facts from the record and then declares no trial court error. In that case, the defendant was convicted of felony murder for a robbery and killing and sentenced to death. An eyewitness testified Germany approached the victim and a witness while they sat in a parked car

and then demanded the victim get out and hand over his wallet. When the victim complied, Germany asked instead for the car keys. The surviving witness testified she heard the keys fall to the ground and saw Germany raise his gun and shoot the victim. The defendant's confession was admitted at trial. In it, he conceded he approached the car, opened the front door, and said, "This is a hold up." 173 Kan. at 222. Then, he said, he asked for the wallet and keys but did not take the wallet. The wallet was never found.

Germany argued on appeal that he was entitled to instructions on second-degree murder and manslaughter because he testified at trial that he did not know the gun was cocked, the whole incident was a Halloween prank, and there was no evidence he intended to commit robbery since he asked for the car keys instead of taking the wallet. The State objected, arguing it was in the defendant's best interest not to issue lesser included offense instructions because the defendant would be acquitted if the State did not prove the robbery. The district court agreed but then commented that the evidence was so strong against the defendant that the jury could only conclude the killing was committed during a robbery. On appeal, this court lumped together all the trial errors alleged, did not analyze them individually, and stated only that "no error was committed in any manner of which the appellant now complains." 173 Kan. at 225-26.

Undoubtedly, the evidence in *Germany* challenging the robbery element was implausible and contradicted by the defendant's own testimony, but this court's simplistic decision departed without explanation from the *Severn* court's analysis that the weight of the evidence is a jury consideration. More oddly, this court would later characterize *Germany* in a subsequent decision as a case in which the evidence at trial excluded the theory of guilt on any lesser degree of crime. *State v. Hoy*, 199 Kan. 340, 343, 430 P.2d 275 (1967). But it would not be until 20 years after *Germany* that this court would again weigh evidence to find the giving of lesser included offense instructions unnecessary and produce the felony-murder instruction rule in its current form.

*(2) Emergence of the current felony-murder instruction rule*

The decision that followed 2 decades after *Germany* was *State v. Masqua,* 210 Kan. 419, 502 P.2d 728 (1972), *cert. denied* 411 U.S. 951 (1973). In that case, the court again found lesser included offense instructions were unnecessary due to the weight of evidence supporting the underlying felony. In doing so, it provided a more detailed analysis for its outcome.

In *Masqua,* the defendant was convicted of felony murder for killing the victim while committing rape. Masqua presented two defense theories. First, he argued he did not do it. Second, he argued that even if he did it, he was too intoxicated to be culpable. The defendant's statements to police that he was drinking beer that evening were the only evidence of intoxication admitted at trial. There was no evidence as to the degree of intoxication.

But the *Masqua* court held that since the defendant did not testify, his admissions to police regarding intoxication were "self-serving" and not "so cogent as to require the giving of the instruction requested." 210 Kan. at 425. It further held that issuing lesser included offense instructions would force the jury to speculate on a degree of homicide "not in the case upon any theory." 210 Kan. at 425. The lack of evidence of intoxication and a determination that there was no evidence supporting lesser included offense instructions would have been sufficient under then-existing case law to find lesser included offense instructions were not required, but the *Masqua* court went further. It stated:

"More compelling, however, is the character of the charges against the appellant. The state's theory was that [defendant] had committed a murder while perpetrating a felony (forcible rape). Homicide while committing a felony is the statutory equivalent to the deliberation and premeditation essential to murder in the first degree. It follows that if the appellant was present at the rape, *the mere participation in that felony would supply the elements of deliberation and premeditation, both of which must be absent from second degree murder and manslaughter.* Either the rape was perpetrated by the appellant and he necessarily is responsible for the murder, or he was not present at the rape where the killing occurred and not guilty of any degree of homicide. [Citations omitted.]" (Emphasis added.) 210 Kan. at 425.

This analysis made two important changes to the case law preceding it. First, it hinted that second-degree murder and man-

slaughter were not lesser included offenses of felony murder by noting felony murder requires deliberation and premeditation. Second, the *Masqua* court grafted the "guilty of both or innocent of all" analysis from the older cases in which a defendant claimed innocence onto a case where the defendant admitted misconduct but argued he was not culpable because he was intoxicated. Since the court had already concluded this theory was not supported by the record, this holding was unnecessary. Two years after *Masqua*, this court relied on it and *Germany* to explicitly hold that the rule for lesser included offenses in felony-murder cases was an exception to the general rule applied in all other criminal cases. *State v. Reed*, 214 Kan. 562, 564, 520 P.2d 1314 (1974).

In *Reed*, the defendant was convicted of felony murder for the robbery and killing of a store clerk. Reed and an accomplice robbed the store at gunpoint. They shot the clerk when they discovered the register contained little money. Both defendants were apprehended immediately after leaving the store. They were tried together, and the facts were outlined in the codefendant's appeal, *State v. Osbey*, 213 Kan. 564, 517 P.2d 141 (1973). Reed argued he was entitled to lesser included offense instructions, but the court held the instructions were not required. In reaching this holding, the court did not examine any facts or trial theories. Instead, the *Reed* court simply began by stating that lesser included offense instructions were only required if there was evidence of circumstances allowing for the reasonable conviction of the lesser included offense. If the court had stopped there, no change in direction or confusion with previous analysis would have been signaled. But it then stated:

"In the past this court has held that in a murder committed during the commission of a felony the usual rule requiring instructions on lesser included offenses does not apply. [Citations omitted.] If a murder is committed while engaged in a felony the felonious conduct itself is held tantamount to the elements of deliberation and premeditation which are otherwise required for first degree murder. [Citations omitted.]

"*Therefore, to support a conviction for felony murder all that is required is to prove that a felony was being committed which was inherently dangerous to human life, and that the homicide was a direct result of the commission of that felony.* [Citation omitted.] *If such proof is produced the only possible conviction can be*

*that of first degree murder under the felony murder rule."* (Emphasis added.) 214 Kan. at 564.

This analysis—that felony murder is the only crime that could be established if the State proves the murder was committed during a felony—strongly suggested there should be no lesser included offenses to felony murder. And in *Bradford,* 219 Kan. 336, 341-42, the defendant argued that *Reed* established that principle. But this court disagreed, changing the evaluation process again.

In *Bradford,* the defendant and a friend were drinking and walking around Manhattan, Kansas. Bradford said something to his friend about robbing someone, and the two separated. The friend heard Bradford demand someone's wallet, and the victim indicated he did not have one. The friend returned to the scene, and the victim attempted to flee. Both Bradford and the friend hit the victim, knocking him down. After the victim lost consciousness, Bradford said they should kill him since he was almost dead. Bradford repeatedly struck the victim in the head, killing him. Then Bradford searched his pockets and removed a pad of paper, which he still possessed when arrested. Bradford offered evidence that the victim had a lot of money with him before he died, but Bradford only took the paper. As such, he argued the evidence of the robbery was disputed. Bradford also contended that a second-degree murder instruction was improper because it was not a lesser included offense of felony murder, citing *Reed.*

The *Bradford* court began by noting the general rule for lesser included offenses set out by statute. See 219 Kan. at 341. It then stated that *Germany* and *Masqua* established an exception for felony-murder cases. And after quoting *Masqua* at length, the *Bradford* court concluded the evidence of the felony was uncontroverted in *Masqua* and *Reed* and, in those cases, the defendant was either guilty of felony murder or innocent. The *Bradford* court concluded *Masqua* and *Reed* were distinguishable because there was conflicting evidence as to whether the robbery occurred in *Bradford.* The *Bradford* court then adopted a rule more similar to that applied in the earlier cases, holding:

"Ordinarily, in a felony murder case, where the evidence of the commission of the felony is clear and uncontroverted, no instruction on lesser degrees of homi-

cide should be given. But where, as here, there is conflicting evidence as to the commission of the felony, and where the evidence will support a conviction of a lesser degree of homicide, instructions on appropriate lesser degrees should be given." 219 Kan. at 343.

Before concluding that the instructions were proper, the *Bradford* court went on to hold:

"While we agree that in a felony murder case no instructions on lesser degrees of homicide should be given where all of the evidence demonstrates that the homicide was committed during the commission of a felony (40 Am. Jur. 2d, Homicide, § 534), we hold that *the rule is otherwise where, as here, evidence of the commission of the felony is disputed or unclear, where the evidence supports instructions on lesser degrees, and where different inferences and conclusions might be drawn by the trier of fact as to which degree of homicide, if any, was committed. State v. Wilson,* 182 Or. 681, 684, 695, 189 P.2d 403 [1948]." (Emphasis added.) 219 Kan. at 344.

This reasoning effectively rescinded the *Reed* court's analysis suggesting there were no lesser included offenses to felony murder. Instead, the *Bradford* court focused on the evidence and defense theories supporting the lesser homicide. It did not hold, as we have more recently, that the sole consideration should be evidence of the felony—that emphasis emerged in *State v. Rueckert,* 221 Kan. 727, 561 P.2d 850 (1977), and the focus again shifted.

In *Rueckert,* the defendant was convicted of felony murder for the shooting and aggravated robbery of a motorist. Three witnesses and the defendant testified. Rueckert's accomplice claimed Rueckert hit the victim on the head with a jack post and took the victim's wallet. Two other witnesses testified that Rueckert confessed to hitting the victim and taking his money. Rueckert claimed that because he was intoxicated, he did not remember whether he struck and robbed the motorist. Rueckert then argued he was entitled to instructions on the lesser degrees of homicide because the aggravated robbery evidence was weak.

The *Rueckert* court cited *Bradford* at length. It specifically referenced the paragraph from *Bradford* quoted above, which held lesser included offense instructions are required when evidence of the commission of the felony is disputed or unclear, the evidence supports lesser instructions, and when the trier of fact could draw

different inferences or conclusions from the evidence. 221 Kan. at 732. But after acknowledging the *Bradford* analysis was sound, the *Rueckert* court curiously concluded that lesser included offense instructions were not required because "the undisputed evidence was sufficient to convince a reasonable mind that a felony had been committed; therefore, instructions on lesser degrees of homicide were not warranted." 221 Kan. at 732. The court then examined the evidence supporting the aggravated robbery and discounted the defendant's voluntary intoxication defense because aggravated robbery is not a specific intent crime. 221 Kan. at 732-33. As such, the court concluded Rueckert either committed robbery and murder or he was innocent.

This analysis signaled a return to the distinct categories made decades earlier by the court. But given its expressed affirmation of the *Bradford* rule, it seems unlikely the *Rueckert* court really intended to create a new standard, though *Rueckert* was the precursor for the current felony-murder instruction rule. That is seen by this court's citation to *Rueckert* in *State v. Sullivan & Sullivan*, 224 Kan. 110, 121, 578 P.2d 1108 (1978), for establishing the principle that lesser included offense instructions are only required if the evidence of the underlying felony is weak or inconclusive.

In *Sullivan*, the defendant was convicted of felony murder in a joint trial with his accomplice, James Sullivan. Three people testified: a witness, John, and James. The witness testified that the night before the homicide James and John planned to rob Randy Moore's home because Moore had taken some of John's possessions. The witness also testified John told him he had to shoot the victim because the victim recognized him. For his part, John testified he went to Moore's house to retrieve property Moore had taken and thought Moore was not home. John had armed himself, he said, because he was afraid of Moore's vicious attack dog. John waited in the yard, realized Moore was home, and was about to leave when he heard someone say they were going to let the dog out. John said he did not see anyone on the porch and he shot at the advancing dog to defend himself. James' confession conflicted with John's story. James stated they went with the intention of burglarizing the home and the shooting occurred before the dog

advanced. John's trial theory was that the homicide was unintentional and he was not guilty of attempted burglary because they had not entered the home. As such, he argued the only crime committed was trespass—a misdemeanor not subject to the felony-murder statute. 224 Kan. at 120-21.

The *Sullivan* court began by citing *Bradford* as holding that lesser included offense instructions are required for felony murder unless no possible view of the facts justified another verdict. 224 Kan. at 121 (citing 41 C.J.S., Homicide § 392c). The court held that the felony would have to be attempted burglary because the defendant had not entered the home. The court then reasoned that to deny the lesser included offense instructions the trial court had to have concluded as a matter of law that the evidence established the defendants committed attempted burglary and no other conclusion was possible. 224 Kan. at 121. Citing *Rueckert* and *Bradford*, this court found the trial evidence of the felony was not so compelling that another verdict was impossible and the trial court erred in refusing the lesser included offense instructions. 224 Kan. at 122.

Again, this analysis examined both the evidence and the defendant's trial theory supporting the lesser included offenses in order for the court to reach its outcome. But the cases immediately following *Sullivan* tend to be conclusory and cite the "weak and inconclusive" rule to support a holding that the evidence of the felony was strong. See *State v. Strauch*, 239 Kan. 203, 218-19, 718 P.2d 613 (1986); *State v. Rider, Edens & Lemons*, 229 Kan. 394, 399-400, 625 P.2d 425 (1981).

Over time, the felony-murder instruction analysis became solely focused on the evidence supporting the felony, and at times the reasoning became circular. See *State v. Hobbs*, 248 Kan. 342, 348, 807 P.2d 120 (1991) (finding the evidence undisputed and not weak or inconclusive considering it "convinced twelve reasonable jurors that an aggravated robbery had been committed and a death resulted"). Our review of the cases that followed did not uncover any opinion explicitly altering the more rigorous analysis of the cases in the 1970s that led to the current rule. But it seems that once the abbreviated language of the rule was established in the

1970s, this court's analysis became less rigorous because it was no longer required to do more under the reasoning so simply stated in *Sullivan*.

Given this less than precise development for what has now become our felony-murder instruction rule, we hold it must be overruled because it unnecessarily misdirects a district court's analysis, especially given the express language in K.S.A. 22-3414(3) that applies to all offenses without distinguishing felony murder. We consider next what analysis should be used.

*(3) Lesser included offense analysis should apply to felony-murder cases*

As mentioned above, K.S.A. 22-3414(3) directs courts as to how they must decide requests for lesser included instructions from criminal defendants. Lesser included offense instructions must be issued if "there is some evidence which would reasonably justify a conviction of some lesser included crime." K.S.A. 22-3414(3). It makes no exception for the judicially created felony-murder instruction rule and does not require there to be conflicting evidence as to the commission of the felony before the statute is applied.

Accordingly, and after thoroughly reviewing the case law developed since *Germany*, we find lesser included offense instructions should follow the statutory mandate so that instructions are issued if there is some evidence that would reasonably justify the conviction of the lesser included crime. In short, we would apply K.S.A. 22-3414(3) as written to felony-murder cases. *Cf. State v. Gunby*, 282 Kan. 39, 57, 144 P.3d 647 (2006) (requiring all other crimes and civil wrongs evidence to be governed by K.S.A. 60-455 and ending past practices of permitting admission of such evidence independent of the statute). We disapprove any language to the contrary in our previous opinions.

In Berry's case, and using the statutory viewpoint directed by K.S.A. 22-3414(3), we find the evidence could reasonably justify a conviction for lesser included crimes. Indeed, the evidence is undisputed that Berry fled from the traffic stop and recklessly drove down city streets at an unconscionably high rate of speed. His flight caused an automobile accident that took someone's life. Such ev-

idence could support a conviction for second-degree reckless murder. See K.S.A. 21-3402(b) (unintentionally killing a person recklessly under circumstances manifesting extreme indifference to the value of human life). Also, the evidence could justify a conviction for involuntary manslaughter. See K.S.A. 2004 Supp. 21-3404(a) (unintentionally killing a person recklessly). And the evidence could support a conviction of vehicular homicide. See K.S.A. 21-3405 (unintentionally killing a person while operating an automobile in a manner that created an unreasonable risk of injury to the person of another and constituted a material deviation from the standard of care a reasonable person would observe under the same circumstances.). As such, the failure to issue the lesser included offense instructions amounts to reversible error when following the statutory directive of K.S.A. 22-3414(3). We reverse Berry's felony-murder conviction based on the above analysis and order a new trial on that charge.

Finally, we hold that the decision announced in this case is to have application in all pending felony-murder cases. This court previously has noted that a new rule for the conduct of criminal prosecutions is to be applied to all cases, state or federal, pending on direct review or not yet final. *Gaudina v. State,* 278 Kan. 103, 106, 92 P.3d 574 (2004) (adopting rule set out in *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 [1987]). A conviction is generally not final until: (1) the judgment of conviction is rendered; (2) the availability of an appeal is exhausted; and (3) the time for any rehearing or final review has passed. *State v. Boggs,* 287 Kan. 298, 305-06, 197 P.3d 441 (2008) (holding new rule in criminal prosecutions is applied to cases pending on direct review but not final); see *Gaudina,* 278 Kan. at 105-06; *State v. Heath,* 222 Kan. 50, 54, 563 P.2d 418 (1977).

Our ruling in Berry's appeal renders moot the remaining issues he raises, but we elect to discuss the arguments relating to Berry's request for an additional causation instruction and the prosecutor's closing arguments. We do so in the interest of judicial economy and because these questions may arise again on remand.

CAUSATION INSTRUCTION FOR FELONY MURDER

At trial, Berry argued there should be an additional jury instruc-

tion regarding the causal relationship between the murder and the underlying possession of cocaine felony. But Berry's trial counsel did not offer alternative language. He simply argued that a causal connection between the commission of the crime and the death required more detailed instruction rather than simply establishing that the two events occurred at the same time. The district court denied the request. It followed PIK Crim. 3d 56.02, stating:

"To establish [the felony-murder] charge, each of the following claims must be proved:
"1.    That the defendant killed Vicki K. Brown;
"2.    That such killing was done *while in the commission* of possession of cocaine with intent to sell or possession of cocaine
"3.    That this act occurred on or about the 25th day of November, 2004, in Sedgwick County, Kansas." (Emphasis added.)

On appeal, Berry argues additional instructions would have better explained causation to the jury. He also argues additional instruction would have clarified the prosecutor's alleged mischaracterization of the elements of the crimes alleged, which is discussed below. But Berry does not articulate in his appeal brief what instruction should have been given, arguing simply that something else should have been done.

*Standard of Review*

When the trial court refuses to give a requested instruction, an appellate court views the evidence in a light most favorable to the party requesting the instruction. A defendant is entitled to an instruction on his or her defense theory, even if the evidence is slight and only supported by the defendant's own testimony. But appellate courts do not consider the requested instruction in isolation. It is considered in light of all the instructions. The instructions are not reversible error, even if they are in some way erroneous, if they properly and fairly state the law as applied to the facts of the case and the jury could not reasonably be misled by them. *Jackson*, 280 Kan. at 549-50. We will use this standard of review, but we note Berry did not actually request a specific alternative instruction.

*Discussion*

This court has previously approved the causation element stated in PIK Crim. 3d 56.02, finding this instruction requires that the death is perpetrated by the defendant or someone else during the *commission* of the felony. *Jackson,* 280 Kan. at 550 (citing *Beach,* 275 Kan. at 625, and *State v. LaMae,* 268 Kan. 544, 555, 998 P.2d 106 [2000]). In *Jackson,* the second requirement in the instructions differed slightly from the one issued here. It required the State to prove " '[t]hat such killing was done *while in the commission of or attempting to commit sale of cocaine.' "* 280 Kan. at 551. The attempt language was not included in the instruction issued at Berry's trial.

The *Jackson* court focused on the commission requirement, concluding that the claim of felony murder would not have been satisfied if the jury had found the drug transaction was complete or the defendant had abandoned it before the killing occurred. The court found the instructions would have required the jury to acquit in those circumstances. 280 Kan. at 551. We recently affirmed this holding in *State v. Ransom,* 288 Kan. 697, 713, 207 P.3d 208 (2009) (PIK Crim. 3d 56.02 sufficiently incorporates the causation requirement). The same analysis applies here. As such, the trial court did not err in refusing to create and issue an additional instruction on causation.

PROSECUTORIAL MISCONDUCT

Berry also argues the prosecutor committed misconduct during closing arguments by omitting the causation requirement when describing the elements of felony murder.

*Standard of Review*

This court employs a two-step analysis for determining whether a prosecutor committed misconduct. First, the court must determine whether the prosecutor's statements were outside the wide latitude for language and manner allowed when discussing the evidence. Second, it must determine whether the comments constitute plain error, *i.e.,* the statements were so gross and flagrant that they prejudiced the jury against the defendant and denied the de-

fendant a fair trial. *State v. Scott*, 286 Kan. 54, 77, 183 P.3d 801 (2008) (citing *State v. Tosh*, 278 Kan. 83, Syl. ¶ 1, 91 P.3d 1204 [2004]).

Three factors must be considered under the second step: (1) whether the misconduct is so gross and flagrant as to deny the accused a fair trial; (2) whether the remarks demonstrate the prosecutor harbored ill will; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct is unlikely to have had much weight with the jurors. *Scott*, 286 Kan. at 78. None of these factors is individually controlling. Before the third factor can override the other two, it must satisfy the harmlessness test from both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). 286 Kan. at 79.

*Discussion*

The State began its closing arguments by reviewing the elements required to convict on each charge. The prosecutor stated:

"I'm going to go through these elements. The jury instructions the judge gives you, that's the law. I'm paraphrasing, obviously, trying to make this readable. So if there's anything that I put on this presentation that is different than the jury instructions, the jury instructions are the law because that's [the judge's] province."

Regarding felony murder, the prosecutor stated the State must prove Berry killed the victim and that the killing occurred while he possessed cocaine. Specifically, the prosecutor stated:

"[W]hen you have the crime of felony murder, what we have to show is that the defendant killed Vicki Brown. It doesn't say intentionally. We don't have to show he intentionally killed her. It doesn't say premeditated. We don't have to show that he acted with premeditation. . . . The only element that you'll see on felony murder is the defendant killed Vicki Brown. That's it on that one, not intentionally, not with premeditation. Doesn't matter if it's an accident. Your question is did he kill her.

"Continuing on that, ask yourself this: Did his actions cause her death? If yes, then he killed her. Now, the killing—the second part of it is that the killing has to be done while possessing cocaine or possessing cocaine with intent to sell. Obviously if you possess cocaine with intent to sell you are possessing cocaine, but it's—*so essentially when you're looking at felony murder you have two decisions: one, did he kill her; two, was he possessing cocaine at the time. If you answer*

*yes to those, yes, his actions killed her, yes, he was possessing cocaine at the time whether it be in his pocket or in the car, then he's guilty of felony murder."* (Emphasis added.)

At the conclusion of rebuttal argument, the prosecutor again stated the jury must find Berry caused the victim's death and possessed cocaine at the time it occurred. He argued:

"Ladies and gentleman, when we went through voir dire we asked about following law in the case and we asked about following the instructions. Instructions on felony murder are very clear. I'm asking that you not add to them. *Did he possess—did he cause her death? Was he possessing cocaine at the time? If those two factors are there then he is guilty of murder."* (Emphasis added.)

Berry contends these statements fail to instruct the jury on the causal connection required to convict for felony murder. And while it may seem minor, there is a distinction between the language approved for the jury instructions—a killing done while *in the commission of* possessing cocaine—and the prosecutor's comment that the killing occurred while possessing cocaine. As discussed above, the "in the commission of" language is critical because the jury's determination that there is not a superseding event is inferred from this finding. *Jackson*, 280 Kan. at 550 (stating " ' "if the jury found that the defendant or another was responsible for the death in the commission of the felony, the jury by definition found that no extraordinary intervening cause existed that was the sole cause of the death" ' "). As such, the State's closing arguments failed to adequately describe the elements of felony murder. This was error under the first step of the prosecutorial misconduct analysis.

But we need not address the second step of the prosecutorial misconduct analysis because the case is being remanded. We presume the State will be more artful in its closing arguments if this case is retried.

Reversed and remanded.

DAVIS, C.J., not participating.

*　*　*

JOHNSON, J., concurring: I wholeheartedly agree with the majority's holding on the issue of lesser included offense instructions

in felony-murder cases. Moreover, I acknowledge and applaud the extraordinary effort required to arrive at that decision. Nevertheless, I must respectfully disagree on the causation instruction issue guidance and opine that, at the new trial, the jury should be clearly and explicitly informed of the causation requirement applicable to the felony-murder charge.

In discussing the sufficiency of the evidence to support the felony-murder conviction, the majority refers to two causation requirements. The first one is said to be a requirement that the death must have been within the res gestae of the underlying crime of possessing cocaine (either with or without the intent to sell in this case). That res gestae requirement is described in temporal terms, *i.e.*, acts done before, during, or after the happening of the principal occurrence. See *State v. Jackson*, 280 Kan. 541, 545, 124 P.3d 460 (2005). The second requirement is a direct causal connection between the felony—here, possession of cocaine—and the homicide. See *State v. Beach*, 275 Kan. 603, Syl. ¶ 3, 67 P.3d 121 (2003) ("there must be a direct causal connection between the commission of the felony and the homicide to invoke the felony-murder rule").

Subsequently, however, the majority finds that it was not error for the district court to refuse to specifically instruct the jury on the legal causation requirement. Granted, the majority can point to our prior cases in which this court found that the "while in the commission of" language of the elements instruction in PIK Crim. 3d 56.02 sufficiently informs the jury of the causation requirement. See *Jackson*, 280 Kan. at 551 (instruction would require jury to acquit if underlying felony had been completed or abandoned); *State v. Ransom*, 288 Kan. 697, 713, 207 P.3d 208 (2009) (PIK Crim. 3d 56.02 sufficiently incorporates the causation requirement).

Notwithstanding those prior cases, the temporal phrase, "while in the commission of," can, at best, only connote the majority's res gestae requirement, *i.e.*, "while in the commission of" might be construed as synonymous with acts done before, during, or after. In no way could a rational juror logically infer from that elements

instruction language that there must be a direct causal connection between the felony and the killing.

The need for a causation instruction is particularly illustrated by the facts of this case. The direct and immediate cause of Brown's death was the physical injury she sustained in the automobile collision. Apparently, that collision was principally caused by Berry's high-speed, reckless driving. Presumably, Berry was driving at a high rate of speed because he had been chased by a police vehicle with activated emergency lights and siren. The high-speed pursuit was precipitated because Berry drove away from a traffic stop after being asked to produce a driver's license that had been suspended. The officer made that request after determining that Berry was *not* committing the traffic infraction for which the traffic stop was initiated, but before forming a reasonable suspicion of any other crime and before the detention evolved into a consensual encounter. See *State v. Thompson*, 284 Kan. 763, 774-76, 166 P.3d 1015 (2007) (consensual encounter possible after completion of traffic stop where objectively reasonable person would feel free to leave). Yet, throughout the res gestae—before the traffic stop; during the stop, chase, and collision; and after the killing—Berry possessed cocaine.

The legal requirement of a direct causal connection between the cocaine possession and the death from automobile collision injuries is not intuitively evident from the facts in this case. Without being told that they had to connect the cocaine possession to the chain of causation, the jurors were left with the PIK Crim. 3d 56.02 elements instruction telling them that all that was needed is a temporal connection, *i.e.*, that the death must occur while the felony is being committed. The jury had no basis upon which to reject the prosecutor's erroneous argument that felony murder only requires the contemporaneous occurrence of the felony and the killing. Accordingly, I would have found that the trial court's failure to give an instruction on felony murder's direct causal connection requirement was an independent basis for reversal.

BEIER, J., joins in the foregoing concurring opinion.